### DUNKLIN v. RIEGELMANN et al.

(Supreme Court, Appellate Term, First Department. November 11, 1915.)

EVIDENCE ☞563—OPINION EVIDENCE—HANDWRITING—COMPETENCY OF WITNESS.

A witness, who stated that she had always understood she was D.'s daughter, but who was not shown to have ever lived with D., or had any means of knowing her handwriting, except from letters said to have been written her by D., was not competent to identify D.'s handwriting, where there was no evidence that such letters were written by D., or evidence of a course of correspondence between the witness and D., from which the witness could know that the letters were from D., since a witness to identify handwriting must have seen the party write, or have seen specimens of his handwriting shown to be genuine; and it is not enough that such specimens purported to come from the person whose handwriting is in question, though, when letters are directed to particular persons on business, and answers are received in due course, a fair inference arises that they were written by the person from whom they purported to come.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2347, 2383, 2384; Dec. Dig. ☞563.]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Hallie M. Dunklin against Edward Riegelmann and another, as executors of Lizzie Z. Duke, deceased. From a judgment entered in favor of plaintiff for $300 and costs, after a trial by a jury, defendants appeal. Reversed, and new trial ordered.

Argued October term, 1915, before BIJUR, PAGE, and SHEARN, JJ.

Augustus Van Wyck, of New York City, for appellants.
Oliver E. Saylor, of New York City, for respondent.

PAGE, J. This is an action against the estate of Lizzie Z. Duke, deceased, to recover the reasonable value of services alleged to have been performed by the plaintiff at her request in investigating the genealogy of Lizzie Z. Duke and preparing data for her admission to the Society of the Daughters of the American Revolution.

The only evidence of the employment of plaintiff by the deceased was a letter purporting to have been written to the plaintiff by the deceased, which, if properly identified as a letter of the deceased, was sufficient to show the employment. The only identification of this letter was the testimony of Mrs. Luranci M. Schoudel, who claimed to be a daughter of the deceased, but who had not seen the deceased for 15 years before her death, and had not had a communication from her in 15 years. The witness stated that she had in her possession letters written to her 15

years ago by the deceased, and had recently examined them to refresh her memory of the handwriting. There was no evidence, however, that the witness had ever seen the deceased write, or that any of the letters which the witness claimed to have in her possession were authentic speciments of the handwriting of the deceased.

In an early case in this state (Cunningham v. Hudson River Bank, 21 Wend. 557) the rule as to qualification of a witness to identify handwriting was clearly expressed as follows:

"A witness must, in some way, have acquired a knowledge of the general character of the party's handwriting, before he can be qualified to testify on that subject. If he has not seen the party write, he must have seen genuine specimens of his handwriting; and the fact that they were genuine must be proved. It is not enough that they purport to come from the person whose handwriting is in question. * * * When letters are directed to a particular person on business, and answers are received in due course, a fair inference arises that the answers were written by the person from whom they purport to come. * * * Other cases might be mentioned where the circumstances will well warrant the inference of authenticity, although there may be no direct evidence to that effect. But in some way the fact that the specimens are genuine must be satisfactorily proved."

In the instant case the witness was asked upon cross-examination:

"Mrs. Schoudel, these letters, that you say you have seen down to recent date, you only know that they were from Mrs. Duke from the fact that they were signed by her name?"

To this she replied:

"No; they were not signed by her name at all. I only knew the writing."

And again she was asked.

"How do you know they were from Mrs. Duke?"

And replied:

"Some have their names, and some have not."

I am of the opinion that the genuineness of the letters from which the witness claimed familiarity with the handwriting of Mrs. Duke was not shown, and the witness was therefore incompetent to testify as to her opinion of the genuineness of the letters placed in evidence. There was no evidence of a course of correspondence between the witness and the deceased, from which the witness could know that her letters were from Mrs. Duke, whose estate is sought to be charged.

As to the relationship between them, we only have the testimony of the witness that she had always understood that she was Mrs. Duke's daughter. It was shown, however, that the witness had not seen or received a letter from Mrs. Duke for 15 years before her death, and it was not shown that the witness had ever lived with Mrs. Duke, or had any means of knowing her handwriting. The letters should not have been received in evidence, and without them the plaintiff's case was unsupported by proof of employment.

Judgment reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.